IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

ANNIE ROBINSON, individually and as
personal representative of the estate of     *
Travis Robinson, et al.,

                                   *

       Plaintiffs,

                                   *     Civil Action No. M-09-0181

v.

                                   *

PRINCE GEORGE'S COUNTY, et al.,

                                   *

       Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS ALEX KIM AND DEOK J. LEE FOR SUMMARY JUDGMENT

Defendants Alex Kim ("Kim") and Deok J. Lee ("Lee"), by their undersigned counsel, have

moved for summary judgment on all claims asserted against them by Plaintiff Annie Robinson

("Robinson"), individually and as personal representative of the estate of Travis L. Robinson, and

Monica Garey ("Garey"), as mother and next friend of Travis Robinson's minor children, Chloe and

Mishaun Robinson.  As explained more fully herein, Defendants Kim and Lee are entitled to

judgment, as a matter of law, on all claims asserted against them.[1] In the alternative, they are entitled

to partial summary judgment on certain of Plaintiffs' damages claims, and on Plaintiffs' claim under

42 U.S.C. §1983.

---

[1] In addition, Defendant Kim's motion for summary judgment based on his discharge in
bankruptcy [Paper No. 17] is pending and has been fully briefed.  Defendants Kim and Lee also
incorporate any arguments for summary judgment made by either Defendant Prince George's County
or Defendant Cpl. Terrace Jenkins, to the extent not inconsistent with Defendants Kim and Lee's
position or defenses in this case.

## Pertinent Procedural Background and Facts

Each of the seven counts asserted in Plaintiffs' complaint (six of which are asserted against Defendants Kim and Lee) are based on a few specific factual allegations:  (1)That Defendant Cpl. Terrace Jenkins, an experienced Prince George's County Police Officer, who was providing security services on the outside of J's Sports Café in the early morning hours of Sunday, January 28, 2007, intentionally and without justification shot and killed Travis L. Robinson as Cpl. Jenkins was responding to a fight on the parking lot in the shopping center, in Laurel, Maryland, where J's Sports Café was located, *Complaint*, ¶¶9-11, and  (2) that Cpl. Jenkins was acting as the agent of both Defendant Prince George's County and of Defendants Kim and Lee at the time he allegedly shot Travis Robinson. *Complaint*, ¶15.

Based on those factual allegations, Plaintiffs have asserted, in Count I, a claim by Annie Robinson as personal representative, against all defendants, under the Maryland Survival Act, for "wrongful and negligent conduct," in which she seeks $5, 000,000.00 in "compensatory and punitive damages." Count II is a Maryland wrongful death act claim, on behalf of Annie Robinson and Travis Robinson's minor children, against all defendants, also for $5,000,000.00 in "compensatory and punitive damages." Count III (which appears to be, like Count I, a survival claim), is for "willful, malicious and intentional" battery, against all defendants, by Annie Robinson as personal representative, for $10,000,000.00 in "compensatory and punitive damages." Count IV, also against all defendants, is a claim under 42 U.S.C. §1983, also for $10,000,000.00 in "compensatory and punitive damages."  Count V is for intentional infliction of emotional distress, against all defendants, for $5,000,000.00 in "compensatory and punitive damages" (which also appears to be a survival claim), brought on behalf of Travis Robinson's estate, through Annie Robinson as

2

personal representative. Count VI is asserted only against Defendants Jenkins and Prince George's County, for violation of the Maryland Constitution.  Count VII is against only Defendants Lee and Kim, for negligent supervision of Defendant Jenkins, and it seeks compensatory damages of $2,500,000.00.[2] Count VII is the only count for direct negligence or wrongdoing by either Defendant Lee or Defendant Kim.  Liability is asserted against them in Counts I, II, III, IV, and V, based only on their alleged *respondeat superior* liability, as the purported employers of Cpl. Jenkins, who is alleged to have been their agent for purposes of his purported shooting of Travis Robinson.

There is no dispute in this case that, at the time Travis Robinson was shot, D&A Restaurant, LLC ("D&A"), was doing business as J's Sports Café, at premises in the Crystal Plaza Shopping Center, in Laurel, Maryland, under a written lease with Crystal Plaza, LLC, which had been assigned to D&A as part of D&A's purchase of the assets of Crystal Plaza Restaurant, LLC, t/a J's Sports Café, a transaction which closed on October 26, 2006.[3] J's Sports Café was an on-going business at the time D&A purchased the assets of Crystal Plaza Restaurant, LLC.[4] D&A's Articles of Organization were accepted for filing by the State Department of Assessments & Taxation ("SDAT")

---

[2]  Although the Complaint also alleges, in Count VII, that Defendants Kim and Lee negligently hired and negligently trained Cpl. Jenkins, Plaintiffs, through their counsel, stipulated, on August 12, 2009, that the only direct claim against Defendants Kim and Lee was that they allegedly negligently failed to supervise Cpl. Jenkins on the night in question.  *See* August 12, 2009, letter from undersigned counsel to Gregory Lattimer, Esquire, at page 2, in connection with Plaintiff Robinson's answer to Kim and Lee's interrogatory no. 16, a copy of which is attached as Exhibit A.

[3]  *See* Affidavit of Alex Kim, ¶2.  The Alex Kim Affidavit is attached as Exhibit B.

[4]  Kim Affidavit, ¶ 3.

on April 3, 2006,[5] and the SDAT accepted for filing the Articles of Transfer between Crystal Plaza Restaurant and D&A on October 30, 2006.[6]  Although D&A's operation of J's Sports Café effectively ceased on or about February 2, 2007, within days of Travis Robinson's shooting,[7] D&A is currently in good standing with the SDAT, although it is not actively engaged in business.[8]

At all times pertinent to this action, Defendants Lee and Kim each owned a 50% membership share in D&A.[9]  It was D&A, however, that owned the assets of and operated J's Sports Café.[10] Defendant Lee had little involvement in the operations of J's Sports Café. Defendant Kim was more involved than Lee in J's operations, although D&A employed a manager, Candy Sinclair, and various employees, for the day-to-day operations.[11]  Ms. Sinclair and the other employees had previously been employed at J's by Crystal Restaurant, LLC, the prior owner.[12]  Similarly, prior to D&A's acquisition of the assets of J's Sports Café, security had been provided on the inside of the Café by a team of approximately 10-12 security people retained through Omar Saxon, who had law

---

[5] See Articles of Organization, a copy of which is attached as Exhibit C.

[6] See Articles of Transfer, a copy of which is attached as Exhibit D.

[7] Kim Affidavit, at ¶ 6.

[8] See Certification of Paul B. Anderson, Charter Division, SDAT, dated November 4, 2009, attached hereto as Exhibit E.

[9] Kim Affidavit at ¶ 2.

[10] Kim Affidavit at ¶¶ 2, 3.

[11] Kim Affidavit at ¶¶ 3, 5; Transcript of deposition of Alex Kim at pages 15-18 (hereinafter "Kim Tr. ___"). Cited pages of Alex Kim's transcript are attached as Exhibit F.

[12] Kim Tr. 13, 15.

enforcement experience as a Maryland correctional officer and had been recommended by the prior owner.[13]  Security on the exterior of J's Sports Café  continued to be provided by off-duty law enforcement personnel who were engaged by Cpl. Ronnie D. Quick, of the Prince George's County Police Department, who began working as lead security personnel at J's Sports Café in January 2005, under the prior owner.[14]  D&A would pay Cpl. Quick, who would supervise the off-duty law enforcement officers he engaged and would pay each of them.[15]  At the time of the shooting, for example, Cpl. Jenkins was paid $40.00 an hour by Quick, he worked on Friday and Saturday nights, and he generally worked about three hours a night.[16]

As part of the transfer of the liquor license from Crystal Plaza Restaurant, LLC, to D&A, D&A was required to submit to the Prince George's County Liquor Board an entertainment and security plan.  A copy of the Entertainment and Security Plan for J's Sports Café submitted to the Liquor Board on September 22, 2006, is attached hereto as Exhibit I.  On January 27-28, 2007, the night in question, there were at least 10 in-house security inside J's, and there were five law enforcement personnel outside of J's at closing.  Two (Cpl. Quick and Defendant Jenkins) were

---

[13]  Kim Affidavit at ¶ 3.

[14]  *See* Affidavit of Continued Operations as a Restaurant with Live Music and Patron Dancing, attached hereto as Exhibit G.

[15]  Transcript of deposition of Defendant Jenkins at pages 10-13 (hereinafter "Jenkins Tr. __."). Cited pages of the Jenkins transcript are attached as Exhibit H.

[16]  Jenkins Tr. 11-12.

Prince George's County Police Officers, two were Prince George's County Deputy Sheriffs, and one was a Capital Heights Police Officer.[17]

There is no dispute that Travis Robinson was at J's Sports Café on the late evening of January 27, 2007, into the early morning hours of January 28, 2007, when he was shot in the parking lot of the shopping center where J's Sports Café was located. He went to J's Sports Café in the company of five other men from the Suitland neighborhood in which he grew up. Mr. Robinson and Charles R. Hall arrived in the PT Cruiser Travis Robinson had rented to go to and from work.[18] Tekeste Makonnen (known as "Ian") and Brian Watson arrived in Mr. Makonnen's Camaro, and Wilbur Wright (known as "EJ") and Jamal Abdul-Haqq (known as "Mick") arrived in Mr. Wright's Cadillac.[19] They all arrived at J's Sports Café sometime between 11:00 p.m. and midnight and were there until approximately 2:30 a.m.[20] Nothing untoward happened inside J's Sports Café while they were there.[21] Everyone was checked by security before being allowed to enter and there were

---

[17] *See* Report of Incident by Detective Christopher E. Smith, a properly authenticated copy of which is Exhibit J hereto.

[18] Transcript of deposition of Tekeste Makonnen at pages 16, 19-20 (hereinafter "Makonnen Tr. _____."). Cited pages of the Makonnen transcript are attached as Exhibit K); Transcript of deposition of Brian Watson at page 13 (hereinafter "Watson Tr. _____."). Cited pages of the Watson transcript are attached as Exhibit L.); Transcript of deposition of Monica Garey at pages 37-38 (hereinafter "Garey transcript Tr.___."). Cited pages of the Garey transcript are attached as Exhibit M.

[19] Makonnen Tr. 19-20.

[20] Makonnen Tr. 20-21; Watson Tr. 25-26.

[21] Makonnen Tr. 21, 25; Watson Tr. 22-25.

"bouncers" visible inside.[22]  The trouble occurred in the parking lot after J's Sports Café had closed. At that point, there were not only law enforcement officers "kind of surrounding the parking lot," but also police vehicles.[23] As Mr. Abdul-Haqq, a/k/a "Mick," was leaving the parking lot in the Cadillac, several male pedestrians walked into the path of his vehicle and would not get out of the way. Mick got out of the car and began fighting. The fight ultimately grew to include at least 10 participants, including Travis Robinson.[24] As police approached, there was a gunshot, which caused the crowd to disperse.[25]  Travis Robinson was struck by a copper jacket hollow point design bullet in the 38 caliber class.[26] He was pronounced dead on January 28, 2007, at Prince George's County Hospital.

Although Plaintiffs have alleged that Defendant Cpl. Jenkins fired the shot that killed Travis Robinson, Cpl. Jenkins categorically denied firing any shots that night.  Cpl. Jenkins testified at his deposition that the group fighting in the parking lot split into two groups. He approached the group to his left to break up the fight when he heard a gunshot from the area of the group on the right. Travis Robinson then stumbled out from between parked cars, said he had been hit, and fell to the ground.  Cpl. Jenkins said that he began first-aid but that a female approached who claimed to have

---

[22]   Makonnen Tr. 26.

[23]   Makonnen Tr. 33.

[24]   Makonnen Tr. 29-30.

[25]   Makonnen Tr. 31, 32.

[26]   *See* Report of Post Mortem Examination, Office of Chief Medical Examiner, at p. 5, a properly authenticated copy of which is attached as Exhibit N.

medical training so he then began to secure the crime scene while she rendered first-aid.[27] The only firearm that Cpl. Jenkins had with him that evening was his service weapon, a 9 mm. Beretta 92FS model police issue, in which he used 9 mm. parabellum plus ammunition, issued to him by the Prince George's County Police Department.[28] He testified that he did not fire his weapon that evening and that, in fact, at that time period, he only fired it once a year and had never fired it at a human being.[29]

## ARGUMENT

### I.      Summary judgment standards applicable to this action.

Plaintiffs filed their complaint in this case on January 28, 2009 [Paper No. 1], two years after the shooting of Travis Robinson. Under this Court's Scheduling Order [Paper No.12], the parties were given four months to complete discovery. Despite this, Plaintiffs have failed to come forward with admissible evidence to support their allegations, including that Cpl. Jenkins shot Travis Robinson, that Cpl. Jenkins was acting as the agent or employee of either Defendant Kim or Defendant Lee on the night in question, that either Defendant Kim or Defendant Lee had some duty to "supervise" Cpl. Jenkins as he responded to the fight in the parking lot outside J's Sports Café, that any duty to "supervise" was breached by either of them, much less was a proximate cause of Cpl. Jenkins' alleged shooting of Travis Robinson, or that any of the Plaintiffs in this case, either on behalf of Travis Robinson's estate or as wrongful death beneficiaries of Travis Robinson, suffered any economic damages, other than funeral expenses, in this case.

---

[27]   Jenkins Tr. 13-14.

[28]   Jenkins Tr. 15, 24.

[29]   Jenkins Tr. 45.

The Supreme Court has made clear that, when there has been adequate time for discovery, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In that situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Thus, the moving party on a summary judgment motion "need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F. 3d 390, 393-94 (4th Cir. 1994)*, quoting* 10A C. Wright, A. Miller, M. Kane *Federal Practice & Procedure: Civil* §2720 at 10 (2d ed. Supp. 1994). There is no requirement that the moving party negate the plaintiff's claims. *Id.*, 33 F. 3d at 394, *quoting Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990). Furthermore, any materials relied upon in opposing a summary judgment motion must be the equivalent of evidence admissible at trial. *Greensboro Professional Fire Fighters Ass'n Local 3157 v. City of Greensboro*, 64 F. 3d 962, 967 (4th Cir. 1995). The issue on summary judgment motions by defendants is "whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proving [plaintiff's] claim at trial." *Mitchell v. Data General Corp.,* 12 F. 3d 1310, 1315-16 (4th Cir. 1993).

As explained below, Plaintiffs cannot support their claims against Defendants Kim and Lee with admissible evidence and, accordingly, Defendants Kim and Lee would be entitled to summary judgment, even in the absence of any affidavits, deposition testimony or other admissible evidence submitted by them in support of their motion for summary judgment, under the legal standards set

forth above.  Here, however, not only have Plaintiffs not put forward admissible evidence to support

their claims, the evidence is to the contrary.

**II.      Plaintiffs have put forward no admissible evidence in support of their allegation that
Cpl. Jenkins shot Travis Robinson.**

As explained above, all of Plaintiffs' various Counts are premised on the allegation that

Defendant Cpl. Jenkins shot Travis Robinson.    Defendant Jenkins, however, under oath,

categorically denied having even fired his weapon on the night in question, much less shooting

Travis Robinson.  In the face of Cpl. Jenkins' unequivocal denial that he shot Travis Robinson,

which is supported by the undisputed fact that the bullet recovered from Travis Robinson's body was

a copper jacket hollow point design bullet in the 38 caliber class, while the ammunition in Cpl.

Jenkins' 9 mm Baretta 92FS model police issue that night was 9 mm. parabellum plus ammunition,

Plaintiffs must come forward with evidence, that would be admissible at trial, from which a fact-

finder could properly conclude that Cpl. Jenkins fired the shot that struck and killed Travis

Robinson, as per *Cray*, 33 F. 3d at 393-94. Plaintiffs have not done so.[30]Absent such evidence,

Defendants Kim and Lee are entitled to judgment, as a matter of law, on all Counts asserted against

them.

_____

[30]   Thus far, the only person identified in this case who purportedly would testify that he
saw Cpl. Jenkins shoot Travis Robinson is Charles Randall Hall, who is currently incarcerated
in North Carolina. *See* Plaintiff Annie Robinson's answer to Alex Kim's interrogatory no. 24.
Plaintiff Robinson's answers to Defendant Kim's second set of interrogatories are attached as
Exhibit O hereto.

**III.    Defendants Kim and Lee are entitled to summary judgment on any *respondeat superior* liability claim because Cpl. Jenkins was not the agent or employee of either Kim or Lee personally.**

Even assuming that Plaintiffs could put forward some admissible evidence to generate a genuine dispute of material fact on the question of whether Cpl. Jenkins shot Travis Robinson, to the extent that any asserted liability of Defendants Kim and Lee is based on their purported *respondeat superior* liability for the alleged wrongful acts or omissions of Cpl. Jenkins, Defendants Kim and Lee are entitled to judgment, as a matter of law.  In order for either Kim or Lee to be liable for Cpl. Jenkins' alleged shooting of Travis Robinson, Plaintiffs must put forward admissible evidence to show that Cpl. Jenkins was, at that time, acting as the agent or employee of Lee and Kim, personally, with the burden of proof being on Plaintiffs. *Brady v. Ralph Parsons Co.*, 308 Md. 486, 512, 520 A. 2d 717 (1987); *Cox v. Prince George's County*, 296 Md. 162, 169, 460 A. 2d 1038, 1042 (1983).

There is no dispute that, from late October 2006 until January 28, 2007, when Travis Robinson was shot, J's Sports Café was operated by D&A Restaurant, LLC, which owned its assets. Although Defendants Kim and Lee were each members of that LLC, there is no evidence that Cpl. Jenkins was acting as either Kim or Lee's agent on the night in question, even assuming that he was acting as the agent or employee of D&A.[31]  Members of an LLC, like corporate shareholders, are generally insulated from liability for the obligations of the LLC. *Ak's Daks Communications, Inc. v. Maryland Securities Division*, 138 Md. App. 314, 331-32 (2001) ("members in a limited liability

---

[31]  Given Cpl. Jenkins' testimony that he was engaged by Cpl. Quick, who paid him, it is not clear that Plaintiffs could even generate a genuine dispute of material fact on the issue of whether Cpl. Jenkins was an agent of D&A.  This Court, however, does not need to reach that issue. There is no evidence that Cpl. Jenkins was an agent or employee of either Kim or Lee, and D&A is not a party to this action.

company are not personally liable for the obligations of the company solely by virtue of their membership in the company. Rather, their liability is limited, like the liability of shareholders," *adopting Great Lakes Chemical Corporation v. Monsanto Company*, 96 F. Supp. 2d 376, 391 (D. Del. 2000)). Under Maryland law, corporations "usually are separate and distinct from their shareholders, insulating those shareholders from liability," *The Travel Committee, Inc. v. Pan American World Airways, Inc.*, 91 Md. App. 123, 157, 603 A. 2d 1301 (1992), and Maryland law "is crystalline that the corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity." *Dixon v. Process Corp.*, 38 Md. App. 644, 654, 382 A. 2d 893 (1978). *Accord Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 310, 340 A. 2d 225 (1978) (shareholders are not generally liable for the obligations of the corporation).

Here, there is no dispute that, at the time of this incident, J's Sports Café was owned and operated by D&A, a limited liability company in good standing with the SDAT. There is no evidence that either Defendant Kim or Defendant Lee was the employer of Cpl. Jenkins, or that, at the time of Travis Robinson's shooting, Cpl. Jenkins was performing any work or service for Defendants Kim or Lee that could make them personally liable, under *respondeat superior*, for any act or omission of Cpl. Jenkins in connection with Travis Robinson's shooting.[32] Accordingly, Defendants Kim and Lee are entitled to summary judgment on all claims premised on their alleged *respondeat superior* liability for the acts or omissions of Cpl. Jenkins, including the claims in Count I (survival act "wrongful and negligent conduct"), Count II (wrongful death), Count III (battery), Count IV (§1983), and Count V (intentional infliction of emotional distress).

---

[32] Kim Affidavit at ¶ 4 .

**IV.    Defendants Lee and Kim are entitled to judgment on the §1983 claim in Count IV.**

The only basis alleged by Plaintiffs for the liability of Defendants Kim and Lee for the

claimed violation of Travis Robinson's constitutional rights, under 42 U.S.C. §1983, is their alleged

*respondeat superior* liability for the purported actions of Cpl. Jenkins.  Even assuming that there

were sufficient evidence to raise a genuine dispute of material fact on the issue of whether Cpl.

Jenkins was acting as the agent or either Lee or Kim, the law is settled that a private person, whether

individual or corporate, cannot be liable under *respondeat superior* for a violation of §1983.  In

*Austin v. Paramount Parks, Inc.*, 193 F. 3d 715, 727-28 (4th Cir. 1999), the Fourth Circuit left open

whether a private person could even be a "state actor" for purposes of §1983 liability.  The Court did

not need to reach that issue because there was no evidence in that case from which a jury could

conclude that the constitutional violation in that case, resulting from the actions of the off-duty law

enforcement officer providing security at the theme park in question, was as a result of some official

policy or custom of the owner/operator of the theme park.  The Court explained that, absent such

official policy or custom, plaintiff could not prevail on her §1983 claim, even assuming a private

person was a "state actor," because §1983 liability cannot be vicarious:

> We have recognized . . . that the principles of §1983 municipal
> liability articulated in *Monell* and its progeny apply equally to a
> private corporation that employs special police officers. Specifically,
> a private corporation is not liable under §1983 for torts committed by
> private police officers when such liability is predicated solely on a
> theory of *respondeat superior.*

*Id.,* 193 F. 3d at 728-29, *citing Powell v. Shopco Laurel Co.*, 678 F. 2d 504, 506 (4th Cir. 1982),

*Rojas v. Alexander's Department Store, Inc.*, 924 F. 2d 406 (2nd Cir. 1990). *Accord Crockett v.*

*Green*, 2007 WL 2956359 n.1 (D. Md. 2007)(Nickerson, J.).

Here, the only theory of liability asserted by Plaintiffs in support of their §1983 claim against Defendants Lee and Kim is their alleged vicarious liability for the claimed acts of Cpl. Jenkins. That is not sufficient, as a matter of law, and Defendants Lee and Kim are entitled to summary judgment on the claims in Count IV.

**V.     Defendants Kim and Lee are entitled to summary judgment on the negligent supervision claim in Count VII because there is no evidence that either of those Defendants breached any duty to supervise Cpl. Jenkins or that any such breach was a legal cause of the shooting of Travis Robinson.**

Even assuming that there was some admissible evidence that Cpl. Jenkins shot Travis Robinson, there is no such evidence to show that either Defendant Kim or Defendant Lee had a duty to supervise Cpl. Jenkins as he attempted to control the persons fighting in the parking lot after J's Sports Café closed in the early morning hours of January 28, 2007, or that, even if they had such a duty, it was breached by them, or that any such breach was a proximate cause of that shooting.

Maryland law does impose on the owners/lessees of real property a duty to exercise reasonable and ordinary care to protect invitees on the premises. *Jackson v. A.M.F. Bowling Centers, Inc.*, 128 F. Supp. 2d 307, 313 (D. Md. 2001)(Chasanow, J.). Neither Defendant Lee nor Defendant Kim, however, owned or leased J's Sports Café, or the parking lot in question, at the time of the shooting. Because D&A owned and operated J's Sports Café at the time of Travis Robinson's shooting, for the reasons explained in the preceding section of this Memorandum, Defendants Kim and/or Lee cannot be personally liable for any claimed breach of some alleged obligation to "supervise" Cpl. Jenkins as he responded to the fight in the parking lot unless either Kim or Lee was employed by D&A to provide such "supervision." There is no such evidence. More fundamentally, however, Plaintiffs have put forward no evidence that *anyone* connected with J's Sports Café, whether D&A, Kim, Lee, or some employee of D&A, had a duty to "supervise" Cpl. Jenkins, a

14

veteran Prince George's County police officer, as he responded to the fight during which Travis Robinson was shot, or that they breached any duty assumed to exist.

Richard D. Hudak, an expert in security measures, including at entertainment venues such as J's Sports Café, was retained in this case by Defendants Kim and Lee and his identity and opinions were timely disclosed by them on August 31, 2009, in accordance with this Court's Scheduling Order and Federal Rule 26(a)(2)(B). Mr. Hudak is the managing partner in Resort Security International. Prior to that, he was the director of corporate safety and security for Loews Corporations from February 2000 until June 2007, and, before that, was the manager of Global Security and Business Continuity for Liberty Mutual Group, director of corporate security world-wide for ITT Sheraton Corporation, provided similar services for other businesses, and was a special agent for the Federal Bureau of Investigation, from 1970-1981.[33] Mr. Hudak set forth his findings and opinions, in a written report, dated August 31, 2009, based on the information available to him as of that date. The materials he referenced are listed at page 1 of his report. In addition, he subsequently reviewed the transcripts of the depositions of Cpl. Jenkins, Defendants Kim and Lee, and of Brian Watson and Tekeste Makkonen.[34] He also set forth in his report, at pages 1 and 2, the factual assumptions on which his opinions were based. However, because of the recently-received deposition transcripts of Kim, Lee, Jenkins, Watson and Makkonen,[35] Mr. Hudak has supplemented those factual assumptions to reflect the additional information, contained in those transcripts, that

---

[33] *See* Affidavit of Richard D. Hudak at ¶ 1, a copy of which is attached hereto as Exhibit P.

[34] Hudak Affidavit at ¶¶ 2, 3.

[35] Those depositions were all taken in October 2009, near the close of the discovery period.

Travis Robinson and at least some of the other persons involved in the fight in the parking lot had

been patrons of J's Sports Café that night, modifying his factual assumption no. 8.[36]

Based on his experience in the fields of law enforcement and resort/entertainment security,

Mr. Hudak's opinions, to a reasonable degree of probability in those fields, are as follows:

1.   On the evening of January 27-28, 2007, the owners and management of J's Sports Café provided reasonably safe and secure conditions for patrons and staff at the property.

2.   The ten "bouncers" inside J's Sports Café and five armed uniformed off-duty law enforcement officers outside the premises far exceeded the staffing levels that similar enterprises employ to provide a reasonable security presence and response capability.

3.   When crime occurs and is witnessed by a law enforcement officer, that officer reverts from an off-duty status to an on-duty status and responds according to the training, department protocol, and department procedures under which he or she was commissioned.

4.   Although there is no credible evidence, even if it is assumed that one or more law enforcement officers used excessive force in the parking lot on the night of the incident, the owners and management of J's Sports Café cannot be held responsible for their actions.

5.   Based on Mr. Hudak's work as a former FBI agent and corporate director of security who has employed off-duty police in many venues world-wide, it is an industry practice that off-duty police officers should not be subject to any security post orders or training that contradicts their role as sworn police officers. Owners and management of private enterprise may brief off-duty police in connection with the policies and procedures of the enterprise, but should not direct their actions.

*See* Hudak Affidavit at ¶¶ 2, 3.  Mr. Hudak's opinion is, thus, affirmative evidence that neither Kim

nor Lee had any duty to "supervise" Cpl. Jenkins in his response to the fight in the parking lot.[37]

To recover in a negligence action, a plaintiff must show (1) a duty that was breached, (2) a

causal connection between the breach and the claimed injury, and (3) damages. *Brown v. Dermer,*

---

[36]   Hudak Affidavit at ¶ 3.

[37]   Hudak Affidavit at ¶4.

357 Md. 344, 356, 744 A. 2d 47 (2000). Whether a duty exists in a particular case is a question of law. *Valentine v. On Target, Inc.*, 353 Md. 544, 549, 727 A. 2d 947 (1999). Plaintiffs cannot prove either the first or second element on their claim for negligent supervision against Defendants Kim and Lee.

On the issue of whether either Lee or Kim owed Travis Robinson a duty to "supervise" Cpl. Jenkins in his response to the parking lot fight, Plaintiffs have not identified any expert in this case, including on the standard of care issues  pertinent to the direct negligence claims asserted against Defendants Lee and Kim, in Count VII of the complaint, for negligent supervision of Cpl. Jenkins. Absent some evidence of what the standard of care requires to support a claim that an alleged employer of an off-duty police officer should be "supervised" by that employer in responding to a fight or similar incident, Plaintiffs cannot prevail, particularly in the face of Richard Hudak's opinion that the owners and management of private enterprise should not direct the actions of off-duty police officers in situations such as that at issue in this case. *See, e.g., Jackson v. A.M.F. Bowling Centers, Inc.*, 128 F. Supp. 2d 307, 314-15 (D. Md. 2001)(Chasanow, J.) (noting, in granting summary judgment for defendant in negligent security action, that plaintiff presented no expert testimony regarding the number of security guards necessary to prevent the fight in question).

Furthermore, Plaintiffs cannot show that anything that Defendants Lee and Kim did or failed to do (even assuming some duty on their part to "supervise" Cpl. Jenkins, and even assuming that Cpl. Jenkins is the one who shot Travis Robinson), caused or contributed to that result, the second element, causation, of Plaintiffs' direct negligence claim against them. Defendants Kim and Lee, in their interrogatory no. 16 to Plaintiffs, expressly asked about the factual basis for the claim of negligent supervision. In answer, Plaintiff Robinson stated as follows:

17

> Plaintiff contends that defendant Jenkins was not properly supervised on the day of the occurrence as he was permitted to outright shoot a patron of the club for no reason whatsoever. Had there been in place proper supervision at the time, defendant Jenkins would not have shot an innocent man who was not posing a threat to him or anyone else.[38]

This answer is purely tautological: The basis for Plaintiffs' negligent supervision claim is that Cpl. Jenkins was not properly supervised because he shot Travis Robinson, and, according to Plaintiffs, Travis Robinson would not have been shot if Cpl. Jenkins had been properly supervised by Defendants Lee and/or Kim. Those circular and conclusory assertions are not evidentiary facts. Plaintiffs are required to put forward evidence from which a fact finder could properly conclude that Defendants Lee and/or Kim (assuming, for purposes of argument, that they had a duty at all to supervise Cpl. Jenkins at the time in question), acted or failed to act in a way that breached such a duty *and* that such act or omission was a proximate cause of the shooting. The mere fact that the shooting occurred is not sufficient.

## VI.    Defendants Kim and Lee are entitled to summary judgment on all claims for economic losses, other than for funeral expenses in Count I.

Although Plaintiffs have sought "compensatory damages" in each of the Counts against Defendants Lee and Kim, Plaintiffs have provided no support or basis for any economic losses, either past or future, with the exception of funeral expenses, which are recoverable in the survival action in Count I, up to the statutory maximum of $5,000.00, under §§7-401(y)(2) and 8-106(b) of the Estates & Trust Article of the Maryland Annotated Code.

In an appropriate case, the personal representative may seek and recover in a survival action, in addition to funeral expenses, any economic damages suffered by the decedent prior to death and

---

[38] *See* Plaintiffs' answers to Kim and Lee's first set of interrogatories, attached hereto as Exhibit Q. The answer to interrogatory no. 16 is at page 8.

caused by the underlying tort. *Smallwood v. Bradford*, 353 Md. 8, 25-26, 720 A. 2d 586 (1998).  In

this case, however, Plaintiff Annie Robinson, as personal representative of Travis Robinson's estate,

has not provided any basis for such an economic loss award to his estate, other than for funeral

expenses. For example, she was asked in Defendants Lee and Kim's interrogatory no. 7, to: "Itemize

and show how you calculate any economic damages claimed by you in this action, and describe any

non-economic damages claimed."  Annie Robinson's answer, as to economic damages, was as

follows:

> Economic Damages:
>
>> Lost wages - See answer to Interrogatory No. 11
>> Funeral Expenses - $ 7147.47
>> Medical Expenses - $ [blank in answer]
>> Minor Children: Loss of financial support and replacement value of the
>> service Travis Robinson would have provided his children.

Interrogatory No. 11, the answer to which Plaintiff Robinson incorporated to respond to the lost

wage claim aspect of her answer to Interrogatory No. 7, asked her to state whether she claimed, in

any capacity, past or future loss of earnings or earning capacity as a result of Travis Robinson's death

and, if so, the amount claimed, the method by which the amount was computed, the figures used in

that computation, and the facts and assumptions upon which the claim was based.  Plaintiff

Robinson's answer, in its entirety was as follows: "Yes. I am seeking loss of future earnings as a

result of Travis Robinson's death. At the time of his death, he was making $15.47 per hour working

an average 66 hours per week. An economic analysis shall be provided in the near future."[39]

---

[39]   The answers to interrogatories are Exhibit Q hereto.  Future lost earnings, *per se*,
are not recoverable in either a survival or wrongful death action for any period post-death. *Jones
v. Flood*, 351 Md. 120, 131, 761 A. 2d 285 (1996).

Plaintiffs have never provided any supplementation to those answers, they did not retain or disclose any expert, either economic, financial or vocational and, indeed, have never quantified in any way any claim for economic losses, either past or future, beyond providing the amount of funeral expenses and the hourly rate at which Travis Robinson was purportedly paid at the time of his death. That is not sufficient to state a claim for any economic losses otherwise recoverable in the wrongful death claim on behalf of Travis Robinson's two minor children.[40]

Economic losses recoverable by primary beneficiaries in a Maryland wrongful death claim are the present value of the pecuniary benefit which they might reasonably have expected to receive from the deceased had he lived. *Valk Manufacturing Co. v. Rangaswamy*, 74 Md. App. 304, 326, 537 A. 2d 622 (1988), *rev'd on other grounds sub nom., Montgomery County v. Valk Manufacturing Co.*, 317 Md. 185, 562 A. 2d 1246 (1989). Where, as here, the beneficiaries are minor children, the measure of damages, on appropriate proof, is the pecuniary value of the "loss of comforts, education and position in society which the child would have enjoyed if the child's father had lived and retained his income and the child had continued to form part of his household," up to the age of majority. *Cincotta v. U.S.*, 362 F. S. 386, 407 (D. Md.)(Md. law); *Driscoll v. U.S.*, 456 F. Supp 143, 148 (D. Del. 1978)(Md. law).

As Judge Nickerson of this Court cautioned, in *Weaver v. Norton*, 2000 WL 33173096 *3 (D. Md. 2000), in the course of granting summary judgment to defendant on a minor child's claim for economic losses in the wrongful death of her father, "speculativeness is to be scrupulously avoided in assessing damages under the Maryland Wrongful Death statute." Thus, a wrongful death plaintiff must not only introduce evidence from which a fact-finder could make a determination as

---

[40]   There is no indication that Annie Robinson, as a wrongful death beneficiary, is claiming that she has suffered economic losses as a result of Travis Robinson's death.

to the gross income the decedent was likely to enjoy in the future had he survived, and the portion

of those projected earnings which decedent, himself, would have consumed, *see Driscoll*, 456 F.

Supp. at 152, there must also be evidence of the value of any "loss of comforts, education and

position in society" during the period of the minor child's minority and to what extent decedent

would have paid or contributed to those costs. *See, e.g. D'Angelo v. U.S.*, 456 F. Supp. 127 (D. Del.

1978)(Md. law)(in which the trial court conducted a detailed analysis of the available Maryland

wrongful death damages for a minor child and their proof).

In a case such as this one, such proof almost necessarily requires some sort of expert

testimony, such as an economist and/or vocational expert. Not only have Plaintiffs failed to identify

any such expert, or to provide the "economic analysis" promised in Annie Robinson's answers to

interrogatories, the *only* information on claimed economic losses, other than funeral expenses,

provided by Plaintiffs is that Travis Robinson, at the time of his death, was making $15.47 per hour

working an average 66 hours per week, and that, commencing in October 2006, less than three

months before his death, Mr. Robinson began working as an apprentice crane operator, and he was

also performing lawn mowing services.[41] That information is simply not enough to allow a jury to

make any non-speculative assessments of the pecuniary benefit that Travis Robinson's minor

children might reasonably have expected to receive from him, over the course of their minority, had

he not died on January 28, 2007.

**VII.    Defendants Kim and Lee are entitled to summary judgment on the claim for punitive damages in the wrongful death claim in Count II.**

Plaintiffs have sought both compensatory and punitive damages in their prayer for relief in

the wrongful death claim in Count II. Punitive damages, however, are not recoverable under the

---

[41]   Garey Tr. 32-33.

wrongful death act, under any circumstances. *Figgie International, Inc. v. Tognocchi*, 96 Md. App. 228, 244 n. 4, 624 A. 2d 1285, *cert. denied,* 332 Md. 381 (1993); *Cohen v. Rubin*, 55 Md. App. 83, 101-02, 460 A. 2d 1046, *cert. denied*, 297 Md. 311 (1983).  Accordingly, Defendants Lee and Kim are entitled to summary judgment on any claim for wrongful death punitive damages.

## CONCLUSION

Although Plaintiffs have made precise and specific *allegations* that Defendant Cpl. Jenkins shot and killed Travis Robinson and that, when he did so, he was acting as the agent or employee of Defendants Lee and Kim, personally, they have not put forward any admissible evidence sufficient to *prove* those allegations.  Cpl. Jenkins has categorically denied shooting Travis Robinson and the objective evidence is consistent with his testimony.  There is also no question that, at the time of the shooting, J's Sports Café was owned and operated by D&A Restaurant, LLC, not Defendants Lee and Kim personally, so that they cannot be vicariously liable for any act or omission of Cpl. Jenkins and, in any event, cannot be liable for a violation of 42 U.S.C. §1983 based on *respondeat superior*. As to the only claim of direct negligence against Defendants Kim and Lee, the claim for negligent supervision in Count VII, there is no evidence to support Plaintiffs' claims that Kim and Lee owed a duty to invitees to supervise Cpl. Jenkins in his response to the fight on the parking lot, much less evidence that they breached such a duty, or that any such breach was a proximate cause of the shooting of Travis Robinson. Finally, Plaintiffs cannot prove any economic losses, other than funeral expenses, and they are not entitled to punitive damages on their wrongful death claim, as a matter of Maryland law.  Accordingly, Defendants Kim and Lee are entitled to summary judgment on all Counts asserted against them in the Complaint and they request that their motion for summary judgment be granted.

/s/ *Kathleen M. McDonald*
Kathleen M. McDonald
Federal Bar No. 00764
Kerr McDonald, LLP
31 Light Street, Suite 400
Baltimore, Maryland 21202
(410) 539-2900
(410) 539-2956 (FAX)
kmcdonald@kerrmcdonald.com

*Attorney for Defendants Alex Kim and*
*Deok J. Lee*