UNITED STATES DISTRICT JUDGE
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANNIE ROBINSON, et al.** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. **PJM 09-181** |
| | * | |
| **PRINCE GEORGE'S COUNTY,** | * | |
| **MARYLAND et al.** | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM OPINION

Plaintiffs Annie Robinson, who is Decedent Travis Robinson's ("Robinson") mother, and Monica Garey, who is the mother and next best friend of Robinson's minor children, sued Prince George's County, Maryland, Corporal Terrace Jenkins, Alex Kim, and Deok Lee in seven counts stemming from an incident resulting in Robinson's death on January 28, 2007. The Counts against all Defendants, except as indicated, are: 1) Survival Act; 2) Wrongful Death; 3) Battery; 4) Deprivation of Civil Rights (42 U.S.C. § 1983); 5) Intentional Infliction of Emotional Distress; 6) Violation of the Maryland Constitution (against Prince George's County and Jenkins); and, 7) Negligent Hiring, Training & Supervision (against Kim and Lee)[1].

The Court has previously granted Defendants Kim and Lee's Motion for Summary Judgment [Document No. 37] and dismissed them from the case. [Document No. 53]. Remaining

---

[1] The Complaint erroneously lists the seventh cause of action as Count V; it will be renumbered Count VII.

1

Defendants Prince George's County and Jenkins have filed a Renewed Motion for Summary Judgment.[2] [Document No. 67]

For the reasons that follow, the Renewed Motion for Summary Judgment is **GRANTED**.

**I.**

The uncontested facts are these:

On January 28, 2007, Robinson drove Charles Hall ("Hall") to J's Sport's Café in the Crystal Plaza Shopping Plaza located in Laurel, Maryland. There they met Tekeste Makonnene, Brian Watson, Wilber Wright, and Jamal Abdul-Haqq. They arrived at J's Sports Café around midnight and stayed until the club closed at 2:30 a.m.

After the club closed, when Abdul-Haqq attempted to leave the parking lot in his vehicle, several males walked in front of his vehicle and refused to move. Abdul-Haqq got out of his vehicle to confront the males and a fight started. The fight grew to involve approximately ten individuals, including Robinson. At the time, Jenkins, an off-duty uniformed Prince George's County police officer who provided security for J's Sport's Café, observed the fight, noticing that it had split into two groups. The parties' differ as to what happened next.

According to Defendants, as Jenkins approached the group to his left, he heard a gun shot and observed Robinson stumble toward him from between two parked cars. Robinson, holding his stomach, apparently stated that he had been hit and fell to the ground. Jenkins alleges that he immediately issued a police broadcast stating that someone had been shot and proceeded to shut down the parking lot. According to Jenkins, a female patron of the club arrived and stated that she had medical training. Jenkins left her to render first aid to Robinson while he attempted to

---

[2] The current parties were in the process of scheduling a trial, but could not agree on a date. The Court decided to consider a renewed Motion for Summary Judgment prior to further attempts to schedule a trial date.

2

secure the crime scene. Jenkins further alleges that he never fired his service weapon on the night of the incident.

In contrast, Plaintiffs allege that when Jenkins arrived at the scene, the crowd began to disperse. According to Plaintiffs, as Robinson ran toward Jenkins' vehicle, Jenkins fired his service weapon one time, striking Robinson in the abdomen. It is undisputed that Robinson sustained a single gun shot wound to his abdomen and subsequently succumbed to his injuries.

Prince George's County police immediately initiated a homicide investigation into the incident. A post-mortem examination concluded that Robinson had died of a single gunshot wound to the abdomen. A single copper jacket hollow 38 caliber class bullet and one grey metal fragment were recovered from Robinson's abdomen.

Prince George's County Evidence Technician Thomas Hilligoss ("Hilligoss") performed a weapons check of Jenkins' firearm, a 9 mm handgun, shortly after the incident. Hilligoss found no evidence that the weapon had been recently discharged. Hilligoss established that Jenkins' firearm contained fifteen 9 mm Parabellum, plus P plus hydrashock rounds.

Tiffany Rogers and Crystal Barnum, two patrons of J's Sport's Café present on the night of the incident, have provided sworn affidavits regarding what they observed. Both witnesses report seeing an unidentified male remove a firearm from underneath a vehicle shortly before the single gunshot was heard. Both state that they saw Jenkins draw his service weapon only after Robinson was shot.

Hall, one of Robinson's friends, has also provided a sworn affidavit. Hall states that he was involved in the fight that occurred shortly before Robinson's death, and that he was running behind Robinson and toward Jenkins when he saw Jenkins raise his firearm, point it toward

Robinson, and shoot Robinson in the abdomen. According to Hall, he then approached Jenkins and asked him why he had shot Robinson, but was pushed away and told to "get the f—k away."

## II.

A motion for summary judgment under Rule 56 challenges the factual sufficiency of the complaint. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "Whether or not a genuine issue of material fact exists is a determination for the court…." *Cram v. Sun Insurance Office, Ltd.*, 375 F.2d 670, 673 (4th Cir. 1967). That determination should afford the party opposing a motion for summary judgment "all favorable inferences which can be drawn from the evidence." *Id.* at 674.

However, denial of summary judgment requires a genuine issue of material fact, not just "the mere existence of *some* alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Materiality is determined by the substantive law—"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Whether it is a *genuine* issue is judged on whether a reasonable jury could find for the non-moving party. *See id.* at 250.

When ruling on a motion for summary judgment, the relevant inquiry is whether the evidence presented by the nonmoving party could sway a reasonable jury to, under the relevant evidentiary burden, find for the nonmoving party. *Anderson*, 477 U.S. at 252. "'A mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966)), *aff'd,* 388 F.2d 987 (4th Cir. 1967). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 380 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986).

A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Gray-Hopkins v. Prince George's County*, 163 F. Supp.2d 571, 577 (D. Md. 2001) (citing *Anderson*, 477 U.S. at 256), *rev'd on other grounds,* 309 F.3d 224 (4th Cir. 2002).

### III.

### A.

In Count IV,[3] Plaintiffs assert that Prince George's County and Jenkins deprived Travis Robinson of constitutionally protected civil rights, thus violating 42 U.S.C. § 1983.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of

---

[3] Because the issue of causation is dispositive of the remaining claims, the Court will address the § 1983 claim first.

5

the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." *See Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977). However, § 1983 "'is not itself a source of substantive rights' but merely provides a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver Oliver*, 510 U.S. 266, 271. As such, a court must begin its analysis of a § 1983 claim by identifying the specific constitutional right allegedly infringed. *Id.*; *see also Carr v. Deed*, 453 F.3d 593, 600 (4th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989).

A claim asserting that a decedent was killed through the use of constitutionally unreasonable force invokes the decedent's Fourth Amendment right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force and must by analyzed under the Fourth Amendment and its 'reasonableness standard.' *Deeds*, 453 F.3d at 600 (citing *Connor,* 490 U.S. at 388) ("all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") "[T]he intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).

In this case, Plaintiffs allege that, by shooting Robinson in the abdomen and causing his death, Jenkins violated Robinson's Fourth Amendment right to be free from unreasonable seizures.

Both parties implicitly accept that Jenkins, as a uniformed police officer driving a police vehicle, was acting under color of state law at the time of the incident. In support of their position, Plaintiffs rely on two pieces of evidence: 1) Hall's testimony, in which he indicates that

the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." *See Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977). However, § 1983 "'is not itself a source of substantive rights' but merely provides a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver Oliver*, 510 U.S. 266, 271. As such, a court must begin its analysis of a § 1983 claim by identifying the specific constitutional right allegedly infringed. *Id.*; *see also Carr v. Deed*, 453 F.3d 593, 600 (4th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989).

A claim asserting that a decedent was killed through the use of constitutionally unreasonable force invokes the decedent's Fourth Amendment right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force and must by analyzed under the Fourth Amendment and its 'reasonableness standard.' *Deeds*, 453 F.3d at 600 (citing *Connor,* 490 U.S. at 388) ("all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") "[T]he intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).

In this case, Plaintiffs allege that, by shooting Robinson in the abdomen and causing his death, Jenkins violated Robinson's Fourth Amendment right to be free from unreasonable seizures.

Both parties implicitly accept that Jenkins, as a uniformed police officer driving a police vehicle, was acting under color of state law at the time of the incident. In support of their position, Plaintiffs rely on two pieces of evidence: 1) Hall's testimony, in which he indicates that

he saw Jenkins draw his firearm, fire and hit Robinson in the abdomen, and 2) the fact that Jenkins' firearm was short one round of the usual sixteen rounds kept in the weapon.[4]

Defendants say that a third party, not Jenkins, caused Robinson's death. They counter with the testimony of two impartial eyewitnesses, Rogers and Barnum, who state that they saw Jenkins draw his firearm only *after* the fatal shot was fired. Rogers and Barnum also report seeing an unidentified third party draw a firearm from underneath a vehicle shortly before Robinson was shot. Notably, the bullet encasing extracted from Robinson's abdomen was a 38 caliber copper shell, whereas the rounds recovered from Jenkins' 9 mm handgun on the night of the incident were 9 mm Parabellum, plus P plus hydrashock.

The Court concludes that a reasonable jury, in light of the evidence presented, could not reasonably find that Jenkins fired the shot that fatally injured Robinson. As stated in *Harris*, where two parties differ on the facts in question, but the record blatantly contradicts one party's assertion, the court is not obligated to accept as true the non-moving party's statement of the facts. 550 U.S. at 380. That is the case here.

First, the evidence presented by Plaintiffs does not address the critical issue of whether a 9 mm pistol is capable of discharging a 38-caliber bullet. It is axiomatic that, in a tort claim, the plaintiff has the burden of proof. *O'Neal v. McAninch*, 513 U.S. 432 (1995). Thus, for a genuine issue of material fact to exist as to whether Jenkins fired the shot that killed Robinson, Plaintiffs must at a minimum proffer evidence showing that it is plausible that the 9 mm pistol carried by Jenkins could fire a 38-caliber bullet of the type retrieved from Robinson's body. As *Gray-*

---

[4] On deposition, Jenkins indicated that he usually keeps 16 rounds in his firearm – 15 in the magazine, and one in the chamber. Jenkins explains the missing bullet on the night of the incident as resulting from his practice of removing the chambered bullet when he is off duty. Jenkins states that he routinely forgets to replace the chambered bullet when he regains control of the firearm to reassume duty. Jenkins could not state with certainty that this was the cause of the missing bullet in this particular instance. One other officer at the scene of the crime was also missing a bullet from his firearm the night of the incident.

*Hopkins* points out, factual support for an element of a tort must be presented through an "affidavit or other similar evidence." 163 F. Supp.2d at 577.

Here Plaintiffs' only statement as to whether a 9 mm pistol can discharge a 38-caliber bullet is the assertion that "anyone who knows anything about firearms knows that a 9 mm pistol can fire 38 caliber cartridges and other types of 9 mm cartridges." Plaintiffs' Opposition at 9. The Court, however, certainly does not know this to be true. In any case, an affidavit from an expert witness could have easily supplied this information, if in fact there is any truth to it. Plaintiffs' bare assertion does not constitute evidence sufficient to meet Plaintiffs' burden of showing that Jenkins' service weapon could have fired a 38-caliber bullet.

Moreover, Hall's assertion that he saw Jenkins shoot Robinson is blatantly contradicted by all other available evidence. The analysis of Jenkins' firearm conducted shortly after the incident by Prince George's County Evidence Technician Hilligoss, revealed no evidence that Jenkins' firearm had been recently discharged. The gun did not emit an odor of gunpowder nor gave any other indication that it had been recently used. This corroborates the testimony of Barnum and Rogers, who have attested that Jenkins did not even draw his firearm until *after* the single gunshot was heard.

Under this set of facts, the Court concludes that no rational trier of fact could find that Jenkins shot and killed Robinson. The death of a son, a loved one, or a friend, is obviously a terribly distressing event. That does not, however, automatically create a cause of action in favor of his survivors. Plaintiffs have presented no genuine issue of fact as to causation, and Jenkins is therefore entitled to summary judgment as to the § 1983 claim.

Plaintiffs also assert a claim for violation of § 1983 against Prince George's County. Aside from the absence of any showing of causation, a county cannot be held liable under § 1983

simply because there exists an employer-employee relationship between it and the officers who allegedly may have caused harm to Plaintiffs' decedent. *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 692 (1978). A county can be sued directly under § 1983 only if the alleged unconstitutional action Plaintiff complains of resulted from a county policy, practice or custom. *Id.* at 690-91 (explaining that liability can be imposed if the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, etc. promulgated by the government entity's officers or a governmental custom).

Municipal liability will attach only when the policy or custom is both fairly attributable to the municipality as its own and is the moving force behind the specific constitutional violation. *Spell v. McDaniel,* 824 F.2d 1380, 1387 (4th Cir. 1987), *cert. denied sub nom. City of Fayetteville v. Spell,* 484 U.S. 1027 (1988) (citations and internal quotation marks omitted). When a policy is itself unconstitutional in that "it directly commands or authorizes constitutional violations," a plaintiff need not independently prove that the policy caused his or her constitutional violation. *See Monell,* 436 U.S. at 661 (unconstitutional policy required pregnant employees to take unpaid leave before it was medically necessary to do so); *Spell,* 824 F.2d at 1387-88 (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 822 (1985) ("no evidence is ... needed [in such a case] other than a statement of the policy")).

However when there is no facially unconstitutional policy at issue, municipal liability results only if the plaintiff proves that the policy or custom alleged caused his or her constitutional violation. *Spell,* 824 F.2d at 1387. "Neither the existence of such a policy or custom nor the necessary causal connection can be established by proof alone of the single violation charged." *Id.* at 1388.

In the present case, the Court has found that Plaintiffs have not presented a genuine issue as to whether Jenkins even shot Robinson. In other words, no constitutional violation occurred. In addition, Plaintiffs have not alleged that Prince George's County maintains an unconstitutional custom or policy. But even if Plaintiffs had alleged such a custom or policy, they have failed to put forth any facts indicating the existence of such a custom or policy.

Accordingly, Count IV is **DISMISSED** as to the two remaining Defendants.

**B.**

In their first and second causes of action, Plaintiffs assert Survival Act and Wrongful Death claims on behalf of Robinson against Prince George's County and Jenkins.

To prevail on a wrongful death claim, plaintiffs must establish that: 1) the death of the decedent was proximately caused by: 2) negligence of the defendant; 3) which resulted in damages to a person or persons who are within the category of defined beneficiaries under the statute, and who; 4) bring their claim within the applicable period provided by the statute. Md. Code Ann., Cts. & Jud. Proc. § 3-902(a); *Univ. of Md. Sys. Corp. v. Malory*, 143 Md.App. 327, 338 (2001). The Maryland Wrongful Death Act provides that a parent or child of a decedent may bring a Wrongful Death Action. Md. Code Ann., Cts. & Jud. Proc. § 3-902(a). The Plaintiffs here—Anne Robinson, mother of the decedent, and Robinson's two minor children, represented by Monica Garey—thus fall squarely within the defined category of beneficiaries. *Id.*

The Survival Act permits the legal representative of the decedent to bring any claims that the decedent may have had and to recover for any funeral expenses caused by the defendant. Md. Code Ann., Est. & Trusts § 7-401(y)(2).

For the reasons stated in Section III.A., *supra*, the Court finds that Plaintiffs have not met their burden of producing even a modicum of plausible evidence demonstrating that the death of

10

Robinson was caused by Jenkins or Prince George's County. In short, Plaintiffs have failed to make a *prima facie* case for the Wrongful Death and Survival Act claims.

Count I and II are **DISMISSED** as to the two remaining Defendants.

## C.

In their third cause of action, Plaintiffs allege battery against Jenkins.[5]

The Maryland Tort Claims Act ("MTCA"), which waives governmental immunity for torts in certain circumstances, is applicable to intentional torts. *Lee v. Cline*, 384 Md. 245, 266 (2004); Md. Code Ann., State Gov't § 12-104(a)(1). Plaintiffs alleging intentional torts or constitutional violations against individual government actors may recover upon a showing of actual malice on the part of the government actor. *Cline*, 384 Md. at 268. Thus, to prevail on a claim of battery, a plaintiff must show that a government officer: 1) committed a battery, and 2) acted with actual malice toward the plaintiff.

As to the first prong, under Maryland law a battery is an offensive, non-consensual touching – the "unlawful application of force to the person of another." *Katsenelenbogen v. Katsenelenbogen*, 365 Md. 122, 140 (2001) (quoting *Snowden v. State*, 321 Md. 612, 617 (1991)). As to the second prong, a law enforcement officer is "not liable for assault and battery or other tortious conduct performed during the course of [his] official duties unless [he] acted with actual malice toward the plaintiff, i.e., with ill will, improper motivation or evil purpose." *Goehring v. United States*, 870 F. Supp. 106, 108 (D. Md. 1994). "Malice is established by proof that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and

---

[5] In their Reply to the Motion for Summary Judgment, Plaintiffs recognize that Prince George's County enjoys immunity against common law torts and withdraw any battery claim against Prince George's County. Accordingly, the Court **DISMISSES WITH PREJUDICE** Count III as to Prince George's County.

11

willfully injure the plaintiff.' " *Lovelace v. Anderson,* 126 Md. App. 667, 693-94 (1999), (*quoting Davis v. DiPino,* 99 Md.App. 282, 290-91 (1994)), *rev'd on other grounds,* 337 Md. 642, 655 A.2d 401 (1995). "The mere assertion that an act 'was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive' is not sufficient." *Manders v. Brown,* 101 Md.App. 191, 216, 643 A.2d 931 (1994), (*quoting Elliott v. Kupferman,* 58 Md.App. 510, 528, 473 A.2d 960 (1984)). Plaintiffs "must allege with some clarity and precision those facts which make the act malicious." *Id.*

Here Plaintiffs assert that Jenkins acted with actual malice when he allegedly shot and killed Robinson. However, the Court has found that Plaintiffs have not created a genuine issue of fact as to whether Jenkins shot Robinson, which is to say, that Jenkins made an "unlawful application of force" against Robinson. As such, Plaintiffs have not made a *prima facie* case of battery.

In addition, Plaintiffs have presented no evidence tending to show malice on the part of Jenkins. There is no indication that Robinson and Jenkins knew each other from a previous encounter or had interacted prior to the wounding of Robinson. Even if the Court were to accept that Jenkins fired the bullet that killed Robinson, which it does not, nothing in the factual context indicates "an evil or rancorous motive influenced by hate," as required by Maryland case law for a showing of malice. *See Lovelace*, 126 Md. App. at 693-95.

Count III is **DISMISSED** as to Jenkins.

**D.**

In Count V, Plaintiffs assert Intentional Infliction of Emotional Distress ("IIED") against Jenkins.[6] To prevail on an IIED claim, a plaintiff must show four elements: 1) the conduct must be intentional or reckless; 2) the conduct must be extreme and outrageous; 3) there must be a causal connection between the wrongful conduct and the emotional distress, and; 4) the emotional distress must be severe. *Harris v. Jones*, 281 Md. 560, 566 (1977) (citing *Womack v. Eldridge*, 215 Va. 338 (1974)). To recover in tort against a law enforcement officer for activities occurring in the course of their lawful activities, a plaintiff must show that the officer acted with actual malice toward the plaintiff, i.e. ill will, improper motivation or evil purpose. *Goehring*, 870 F. Supp. at 108; Md. Code Ann., Cts. & Jud. Proc. § 5-301.[7]

As discussed above, Plaintiffs have presented no evidence sufficient to create a genuine issue of material fact as to whether Jenkins fired the shot that resulted in Robinson's death. As such, the causal connection required to state a claim for IIED has not been shown. Furthermore, as discussed in Section III.C., *supra*, Plaintiffs have presented no evidence showing malice on the part of Jenkins.

Count V is **DISMISSED** as to Jenkins.

---

[6] Here, too, Plaintiffs have recognized Prince George's County's immunity against Intentional Infliction of Emotional Distress claims, and assert this count only against Jenkins. Accordingly, the Court **DISMISSES WITH PREJUDICE** Count V as to Prince George's County.

[7] Defendants incorrectly claim that Plaintiffs must present evidence showing that Robinson experienced emotional distress after the gunshot wound and prior to his death. While expert testimony indicating that a victim likely suffered from emotional distress is helpful, in certain cases emotional distress may be inferred from the nature of the defendant's conduct. *See Caldor, Inc. v. Bowden*, 330 Md. 632, 673-74 (1993). However, Plaintiffs' case for IIED fails because Plaintiffs cannot meet the required evidentiary burden as to causation.

**E.**

In Count VI, Plaintiffs allege violation of Article 24 and Article 26 of the Maryland Constitution against Prince George's County and Jenkins. Maryland interprets Article 24 and Article 26 *in para materia* with their federal counterparts, the Fourteenth and Fourth Amendments, respectively. *Parker v. State*, 402 Md. 372, 400 (2007) (citations omitted).

Whether Plaintiffs' claim is analyzed under the Fourth Amendment, insofar as it applies to arrests, investigations, or other seizures by police, *See Graham v. Connor*, 490 U.S. at 395, or under the Fourteenth Amendment's Due Process Clause, applicable to non-seizure cases involving police, *See Brown v. County of Inyo*, 489 U.S. 593, 596-97 (1989), makes no difference. As discussed earlier, the evidence presented by the Plaintiffs is insufficient to create a genuine issue of material fact as to whether Jenkins fired the bullet that struck and killed Robinson. In short, there is no issue of excessive force because there is no evidence that any force was applied by Jenkins. Plaintiffs have not shown a violation of Article 24 of the Maryland Constitution.

Count VI is **DISMISSED** as to the two remaining Defendants.

**IV.**

For the foregoing reasons, the Court **GRANTS** Defendants' Renewed Motion for Summary Judgment [Document No. 67] as to all Counts. Final judgment will be entered in favor of Prince George's County and Jenkins and the case will be **CLOSED**.

A separate Order will **ISSUE**.

May 5, 2011

                                                       /s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**